**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JAMES GORDON HILL,

        Petitioner,

vs.                                                         Case No. 3:11-cv-196-J-37TEM

UNITED STATES,

        Respondent.

## ORDER

This matter is before the Court on the following:

(1)     Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 1), filed March 3, 2011;

(2)     The Government's Motion to Dismiss Defendant's *Pro Se* Motion Pursuant to 28 U.S.C. § 2255 (Doc. No. 17), filed November 4, 2011; and

(3)     Petitioner's Reply (Doc. No. 23), filed December 19, 2011.

## BACKGROUND

### A. Petitioner's Plea and Sentencing

On December 21, 2007, James Gordon Hill ("Petitioner") entered a guilty plea, pursuant to a written plea agreement, in front of Magistrate Judge Snyder ("Judge Snyder"). He plead guilty to possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924 (the "Armed Career Criminal Act" or "ACCA"). (*See* No. 3:07-cr-275-J-16HTS, Doc. No. 1.) During his plea hearing, he admitted that he had previously been convicted of a number of crimes punishable by imprisonment for a term exceeding one year, all of which were listed in Count One of the Indictment. (No. 3:07-cr-

275-J-16HTS, Doc. No. 42, Plea Hearing Transcript, 22:1-23:14) These included:

1. Count One, Burglary of a Conveyance, Count Three, Burglary of a Conveyance, Count Four, Burglary of a Conveyance, Count Six, Burglary of a Dwelling, Count Seven, Burglary of a Conveyance, in Case Number CR 93-1297, in the Circuit Court, Ninth Judicial Circuit, in and for Osceola County, Florida, on or about April 25, 1994;

2. Escape, in Case Number CR 94-1032, in the Circuit Court, Ninth Judicial Circuit, in and for Osceola County, Florida, on or about February 7, 1995;

3. Dealing in Stolen Property, in Case Number CR 94-1076, in the Circuit Court, Ninth Judicial Circuit, in and for Osceola County, Florida, on or about March 10, 1995;

4. Battery of a Law Enforcement Officer, in Case Number CR 00-1387, in the Circuit Court, Ninth Judicial Circuit, in and for Osceola County, Florida, on or about February 20, 2002;

5. Possession of Burglary Tools, in Case Number 05-2000-CF-42175, in the Circuit Court, Eighteenth Judicial Circuit, in and for Brevard County, Florida, on or about November 26, 2001; and

6. Manufacturing Counterfeit Obligations, in Case No. 3:01-00038, in the United States District Court, Southern District of West Virginia, on or about June 11, 2001.

(*Id.*) Petitioner attested that he understood the nature of the charge against him and understood that the maximum penalty for such a charge was a minimum mandatory sentence of fifteen years (180 months) imprisonment up to life imprisonment, a maximum

fine of $250,000, or both the term of imprisonment and the fine, a term of supervised release of not more than five years, and a special assessment of $100. (Plea Hr'g Tr. 24:2-7.) He also affirmed that he understood that after the guideline sentence applicable to his case had been determined, the judge would have the authority to impose a sentence that was more severe or less severe than that which is recommended. (Plea Hr'g Tr. 27:22-28:1.) Further, Judge Snyder ensured that Petitioner understood that the U.S. Attorney recommended a two-level downward adjustment for the acceptance of responsibility, but also recommended a two-level upward adjustment for the base offense level because Petitioner obstructed or impeded the administration of justice when he perjured himself at a final revocation hearing on March 3, 2006 before Judge Antoon, II, in Orlando, Florida. (*Id.* at 31:22-32:1; 33:20-34:8.)

After Petitioner assured Judge Snyder that he was entering into the plea agreement freely, willfully, and voluntarily, and that he fully understood that he could not challenge the sentence later imposed, whether by direct appeal, collateral attack or otherwise, Judge Snyder asked the prosecutor to describe the factual basis contained in the plea agreement. (*See id.* at 33:3-9; 36:3-4.) Petitioner admitted the truth of the facts recited, stating that they were correct. (*Id.* at 38:8.)

On April 24, 2008, Petitioner appeared before Judge John Moore for sentencing. (*See* No. 3:07-cr-275-J-16HTS, Doc. No. 44, Sentencing Hearing Transcript.) At that time, Judge Moore sentenced Petitioner to 188 months followed by a period of supervised release for a term of five years. (*Id.* at 43:1-16.) Judge Moore reminded Petitioner that pursuant to the plea agreement, he waived his right to appeal either directly or collaterally, unless his sentence was in excess of the applicable guidelines range as determined by the

Court, above the statutory maximum, violative of the Eighth Amendment to the Constitution, or if the government exercised its right to appeal from the sentence. (*Id.* at 46:2-14.) Nevertheless, as required by law, Judge Moore informed Petitioner that if he were to try to appeal the sentence, he would be required to do so within ten days from the date of the sentencing hearing and that failure to appeal within the ten-day period would serve as another grounds for waiver of appeal. (*Id.* at 46:15-22.)

### B. Petitioner's 28 U.S.C. § 2255 Motion

On March 3, 2011, Petitioner filed his Motion to Vacate, Set Aside, or Correct Sentence (Doc. No. 1), Memorandum in Support of Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. No. 2), and Appendix to Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (collectively, the "Motion"). The Government filed a Motion to Dismiss Defendant's *Pro Se* Motion Pursuant to 28 U.S.C. § 2255 ("Motion to Dismiss"), to which Petitioner responded on December 19, 2011.[1]

In the Motion, Petitioner contends that "recent changes in Supreme and Circuit Court precedent regarding the use of certain prior offenses . . . specifically Escape, Burglary, and Battery of a Law Enforcement officer, cause [his] classification as an Armed Career Criminal, and his sentence which was enhanced pursuant to such act, to be erroneous." (Doc. No. 2, p. 2.) He cites *Begay v. United States,* 553 U.S. 137 (2008), *Chambers v. United States,* 555 U.S. 122 (2009), *Gilbert v. United States,* 640 F.3d 1293 (2011), and *Johnson v. United States,* 130 S. Ct. 1265 (2010) as support for his argument that "several

---

[1] The Court granted a number of extensions to both the Government and Petitioner, and this matter did not become ripe for disposition until December 19, 2011.

4

recent cases" have "redefined" what constitutes an Armed Career Criminal. (*See id.* at p.16.) Petitioner also contends that "[i]ncorrect information regarding the nature of one of [his] convictions" serves as further grounds for setting aside his sentence." (*Id.* at p. 2.)

The Government sets forth two arguments in its Motion to Dismiss. (Doc. No. 17.) First, it contends that Petitioner's knowing and voluntary waiver of his right to attack his conviction either directly or collaterally in his plea agreement precludes him from bringing this 28 U.S.C. § 2255 Motion. (Doc. No. 17, pp. 2-5.) Next, it asserts that even if Petitioner had not waived his right to appeal, the Motion is untimely. (Doc. No. 17, pp. 5-9.)

## DISCUSSION

### A. Timeliness

The Antiterrorism and Effective Death Penalty Act establishes a one-year limitation period for 28 U.S.C. § 2255 motions. *See Goodman v. United States*, 151 F.3d 1335, 1336 (11th Cir. 1998). Section 2255(f) states, in pertinent part:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of–
>
> (1)     the date on which the judgment of conviction becomes final;
>
> ***
>
> (3)     the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.
>
> ***

28 U.S.C. § 2255(f); s*ee also Pruitt v. United States*, 274 F.3d 1315, 1317 (11th Cir. 2001).

Petitioner's judgment was entered on April 25, 2008. (No. 3:07-cr-275-J-16HTS, Doc. No. 34.) The judgment became final ten days later, when the period for filing a notice

5

of appeal expired. Fed. R. App. P. 4(b)(1)(A)(i) (West 2007); *see Ramirez v. United States*, No. 8:10-cv-988, 2011 WL 3489600, at \*1 (M.D. Fla. Aug. 9, 2011). Petitioner filed the Motion on March 3, 2011, nearly three years after his conviction became final. (Doc. No. 1.) Consequently, the motion is time-barred under § 28 U.S.C. 2255(f)(1).

Nevertheless, Petitioner argues that his motion is timely because he filed it within one year of the Supreme Court's decision in *Johnson v. United States*, 130 S. Ct. 1265 (2010), which was decided on March 2, 2010. (Doc. No. 23, pp. 5-6.) He maintains that 28 U.S.C. § 2255(f)(3) applies because *Johnson* marks the first time the Supreme Court recognized the right upon which the Motion is based.[2] The Court does not address Petitioner's arguments pertaining to *Begay,* 553 U.S. 137 or *Chambers*, 555 U.S. 122 because there is no question that the Motion was not filed within one year from either of those decisions.

"In *Johnson*, the Supreme Court examined whether simple battery under Florida law is a 'violent felony' for the purpose of the [ACCA]." *Barberree v. United States*, No. 8:10-cv-2492, 2011 WL 139672 (M.D. Fla. Apr. 13, 2011). The ACCA defines a "violent felony" offense "to have as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* (citations omitted). The *Johnson* court held that "physical force" means "violent force– that is, force capable of causing physical pain or injury to another person." 130 S. Ct. at 1269. Therefore, it determined that Florida's

---

[2] Petitioner's 28 U.S.C. § 2255 motion was filed on March 3, 2011. It was signed and dated on February 26, 2011. The Court acknowledges that March 3, 2011 is technically a year and a day from the date of the *Johnson* decision, but because it ultimately must deny the Motion on other grounds, it does not address whether the "mail box rule" applies here, or other issues surrounding the "timeliness" of the Motion in this regard.

6

battery statute, which includes "*any* intentional physical contact," does not qualify as a violent felony under the ACCA because the offense requires "proof of only the slightest unwanted touch." *Barbarree*, 2011 WL 1396972, at *5*; see also Smith v. United States*, No. 8:11-cv-1022, 2012 WL 868888, at *2 (M.D. Fla. Mar. 14, 2012). "The *Johnson* court did not, however, hold that the Florida offense of battery on a law enforcement officer could never be considered a 'violent felony.' " *Barbarree*, 2011 WL 1396972, at *6. Instead, the Court found that "a Florida conviction for BLEO could be a 'crime of violence' depending on the particular facts of the conviction." *Id.*

This Court need not determine whether Petitioner's BLEO conviction, which was included as one of the qualifying offenses for the ACCA sentencing enhancement, would in fact constitute a "crime of violence" because *Johnson* has not been made retroactively applicable on collateral review. *Smith,* 2012 WL 868888, at *2 ("[N]either the Supreme Court nor the Eleventh Circuit has made *Johnson* retroactively applicable on collateral review."); *Jackson v. United States,* No. 8:10-cv-2000, 2011 WL 4005291, at * (M.D. Fla. Sept. 8, 2011) ("No binding Eleventh Circuit decision requires the retroactive application of *Johnson* to Petitioner's Section 2255 motion and he cites no legal authority to support his contention that *Johnson's* date is the appropriate trigger for the federal limitation in determining the timeliness of a Section 2255 motion."); *Hired v. United States,* No. 8:11-cv-388, 2011 WL 3566701, at *2 (M.D. Fla. Aug. 12, 2011) ("[T]hus far, *Johnson* has not been applied retroactively by the Eleventh Circuit. Moreover, this Court finds that *Johnson* did not recognize a new right."); *Baskin v. United States*, No. 8:10-cv-1721, 2011 WL 794821, at *2 (M.D. Fla. Mar. 1, 2011) (finding that *Johnson, Chambers,* and *Begay* "have not been applied retroactively to post-conviction relief motions, and therefore provide no relief for

Petitioner."); *see also Ramirez*, 2011 WL 3489600, at *2. Because *Johnson* does not apply retroactively, the timeliness of Petitioner's motion is calculated from the date his conviction became final. Thus, it is untimely.

### B. Procedural Bar

"As a general rule, a sentencing error . . . must be raised on direct appeal or else it is barred in a § 2255 proceeding." *Smith*, 2012 WL 868888, at *3 (citing *Lynn v. U.S.*, 365 F.3d 1225 (11th Cir. 2004)). Petitioner procedurally defaulted his "career offender argument when he did not file a direct appeal." *Id.* In a recent unpublished but nevertheless persuasive Eleventh Circuit opinion, the court held that a petitioner who relied in part on *Johnson* did not have "cognizable" grounds for relief under § 2255 because his claims were "non-constitutional" in nature and he failed to raise them on direct appeal. *Kerr v. United States,* No. 10-13621, 2012 WL 425792, at *1 (11th Cir. Feb. 10, 2012). The court explained, "[S]ection 2255 relief is available only if the [alleged sentencing] error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice." *Id.* (internal quotation marks and citations omitted). It ultimately found that because the petitioner "could have challenged his career-offender status on direct appeal," he was barred from raising the argument in a collateral appeal. *Id.* ("Indeed, even though the decisions in *Begay,* [*United States v. Archer,* 531 F.3d 1347 (11th Cir. 2008)], and *Johnson* were unavailable when [the petitioner] was sentenced in 2001, he could have argued on appeal that his career-offender status was improper– just as Begay, Archer, and Johnson did.")

Similarly, in *Page v. United States*, 440 F. App'x 767, 769 (11th Cir. 2011), the Eleventh Circuit stated, "[T]he fact that this Circuit's precedent may have been adverse to

[the petitioner's] claim does not mean that the appeal was 'unavailable.' . . . Because [his] status as a career offender is a non-constitutional issue that he could have raised on direct appeal, it is not cognizable on collateral review under § 2255." In *Page*, the petitioner also attempted to rely on *Johnson* as a basis for filing a § 2255 motion. The Eleventh Circuit found he was procedurally barred from doing so. For the reasons discussed above, this Court finds that Petitioner's *Johnson* claims are procedurally barred.

### C. Appeal Waiver

Even if *Johnson* applied retroactively, rendering Petitioner's Motion timely, and even if Petitioner's Motion was not procedurally defaulted, he is not entitled to relief. As described above, Petitioner's written plea agreement included an express waiver of his right to appeal or collaterally attack his sentence. (*See* No. 3:07-cr-275-J-16HTS, Doc. No. 26.) During Petitioner's change of plea hearing, he acknowledged the waiver of his right to appeal, and affirmed that he was entering into a plea agreement containing such a waiver freely and voluntarily. (Plea Hr'g Tr. 17:3- 21:15.) The relevant portions of the plea colloquy are as follows:

> THE COURT: In glancing at your plea agreement, I noticed over on page seven there's a paragraph five that talks about the waiver of your right to appeal. And, in view of that, I wanted to visit with you on the topic. Normally you have a right to appeal your sentence on any ground that you think is appropriate. Under this plea agreement, however, you have waived and given up your right to appeal or otherwise challenge the sentence which is imposed upon you either directly or collaterally except for certain specific reasons.
>
> Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you understand that based upon a provision of your plea agreement you're waiving your right to appeal your sentence, and that by this waiver you give up your right to appeal or contest your sentence directly or

>collaterally on any ground, including the ground that the court erred in determining the applicable guidelines range pursuant to the U.S. Sentencing Guidelines, except, a, the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the court pursuant to the U.S. Sentencing Guidelines; b, the ground that the sentence exceeds the statutory maximum penalty; or, c, the ground that the sentence violates the Eighth Amendment to the constitution. So, now, you understand that provision?
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: And you agree to it and accept it?
>
>THE DEFENDANT: Yes, sir, I do.
>
>THE COURT: And do you do so knowingly and intelligently and voluntarily and freely?
>
>THE DEFENDANT: Yes, sir.
>
>\*\*\*
>
>THE COURT: So do you understand the term collateral or collaterally as it's used in the plea agreement?
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: And do you use that term knowingly, intelligently, voluntarily, and freely?
>
>THE DEFENDANT: Yes, sir.

(*Id.*) Upon completion of the full colloquy, Judge Snyder found that Petitioner freely and voluntarily entered his plea. (Plea Hr'g Tr. 49:3-17.)

An appeal waiver in a plea agreement is enforceable if the waiver is made knowingly and voluntarily. *United States v. Weaver*, 275 F.3d 1320, 1333 (11th Cir. 2001). Such a waiver precludes a defendant from collaterally attacking his conviction in a § 2255 motion.[3] *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005). An appeal waiver will be

---

[3] There may be some exceptions to this general prohibition, but none are applicable here.

enforced if the Government demonstrates either: (1) that the court specifically questioned the defendant about the waiver during the plea colloquy, or (2) that the record clearly shows that the defendant "otherwise understood the full significance of the waiver." *Id.* at 1341 (internal quotation marks and citations omitted). Here, Judge Snyder specifically questioned Petitioner about the waiver and the record clearly shows that Petitioner understood the significance of the waiver. Therefore, even if Petitioner's arguments were not precluded due to timeliness and procedural default, they would fail because he waived his right to collaterally appeal his sentence. *See Smith,* 2012 WL 868888, at *4.

## CONCLUSION

In light of the foregoing it is hereby **ORDERED AND ADJUDGED** that the Government's Motion to Dismiss Defendant's *Pro Se* Motion Pursuant to 28 U.S.C. § 2255 (Doc. No. 17) is **GRANTED** and Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 1) is **DENIED**.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

It is **FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong . . . or that the issues presented were adequate to deserve encouragement to proceed

further." *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (internal quotation marks and citations omitted) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Petitioner has not made the requisite showing. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida, on April 3, 2012.

ROY B. DALTON, JR.
United States District Judge

Copies:
Counsel of Record
Pro Se Party